## BIRD v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DIS-
TRICT OF ALASKA.

No. 278. Argued January 21, 1901.—Decided February 25, 1901.

Bird was indicted for murder. The killing was admitted, but it was claimed to have been done in self-defence. At the trial a government witness testified " that in the month of August, when the defendant, in company with the deceased Hurlin, R. L. Patterson, Naomi Strong and witness, were going up the Yukon River in a steam launch, towing a barge loaded with their provisions, Hurlin was steering; that the defendant was very disagreeable to all the other persons; that when they would run into a sand bar he would curse them; he would say: ' The Dutch sons of bitches don't know where to run it.' On one occasion they were getting wood on the bank of the river, and Bird got out and wanted to hit Patterson. Witness didn't remember exactly what was said, but defendant called Patterson a ' son of a bitch,' and told him he would ' hammer the devil out of him,' and witness and the others would not let them fight. And if anything would go wrong, he, defendant, would not curse in front of the witness, and the others' faces, but defendant would be disagreeable all the way along, and would make things very disagreeable." This evidence was excepted to and the court held that its only doubt was whether the evidence, though improperly admitted, was of sufficient importance to call for a reversal of the judgment, but it sustained the exception. Afterwards the Government, to maintain the issues on its part, offered the following testimony of the witness Scheffler: That in the latter part of March, 1899, after Patterson had been carried to Anvik, Bird made a trip up the river and came back with a man by the name of Smith; that Smith left and the next day after that Bird was very disagreeable and tried to pick a fight with the woman, Naomi Strong; he acted very funny, you had to watch him and be careful. He got awful good after that and everything was just so. It was " Charles this," and " Naomi this." To which testimony defendant excepted, and the exception was sustained.

The court at the request of the Government instructed the jury that " if they believe from the evidence beyond a reasonable doubt that the defendant Bird, on the 27th day of September, 1898, at a point on the Yukon River about two miles below the coal mine known as Camp Dewey, and about 85 miles above Anvik, and within the District of Alaska, shot and killed one J. H. Hurlin, and that said killing was malicious, premeditated and willful, and that said killing was not in the necessary defence of the defendants's life or to prevent the infliction upon him of great bodily harm, then it is your duty to find the defendant guilty as charged in the indictment." Held that this was substantial error.

AT a term of the United States District Court in and for the District of Alaska, Homer Bird, the plaintiff in error, was tried on a charge of having murdered one J. H. Hurlin on the 27th day of September, A. D. 1898. On December 6, 1899, the jury found the defendant guilty as charged in the indictment, and on December 13, 1899, a motion for a new trial having been overruled, a sentence of death by hanging on February 9, A. D. 1900, was pronounced. A bill of exceptions was settled and signed by the trial judge on February 8, 1900, and a writ of error from the Supreme Court of the United States was allowed. The evidence contained in the bill of exceptions shows that a party of five persons, composed of Homer Bird, J. H. Hurlin, Robert L. Patterson, Charles Scheffler and Naomi Strong, sailed up the Yukon River, in the latter part of July, 1898, on an adventure in search of gold. They traveled on a small steam launch, towing a scow laden with an outfit of clothes and provisions sufficient to last them about two years. In the latter part of September, 1898, they reached a point on the river about 600 miles from St. Michaels, at the mouth of the Yukon, when they determined to go into winter quarters, and there began the construction of a cabin on the banks of the stream. On September 27, 1898, in a quarrel that had arisen about a partition of the supplies, Hurlin was shot and killed by Bird. At the trial in December, 1899, there were three witnesses who had been present at the time of the homicide, Scheffler, Strong and Bird, the accused. As the fact of the killing of Hurlin by Bird was not denied, the trial turned on the question whether the killing was malicious and willful or was in self-defence.

*Mr. L. T. Michener* for plaintiff in error.

*Mr. Assistant Attorney General Beck* for defendants in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The assignments of error are twenty-five in number, but of these we think it sufficient to consider only the tenth, the fourteenth and twenty-third.

The homicide, as alleged in the indictment, occurred on September 27, 1898, at a point on the Yukon River about eighty-five miles above Anvik, and about two miles below a coal mine known as Fort Dewey.

At the trial the Government called as a witness for the prosecution one Charles Scheffler, who testified, among other things—

"That in the month of August, when the defendant, in company with the deceased, Hurlin, R. J. Patterson, Naomi Strong and witness, were going up the Yukon River in a steam launch, towing a barge loaded with their provisions, Hurlin was steering; that the defendant was very disagreeable to all the other persons; that when they would run into a sand bar, he would curse them; he would say 'the Dutch sons of bitches don't know where to run it.' On one occasion they were getting wood on the bank of the river, and Bird got out and wanted to hit Patterson. Witness didn't remember exactly what was said, but defendant called Patterson a 'son of a bitch,' and told him he would 'hammer the devil out of him,' and witness and the others would not let them fight. And if anything would go wrong he, defendant, would not curse in front of witness and the others' faces, but defendant would be disagreeable all the way along, and would make things very disagreeable."

To this testimony the defendant, by his counsel, objected " as immaterial and irrelevant, and too remote from the time the offence is charged to have been committed ;" but this objection was by the court overruled, and said testimony permitted to go to the jury ; to which ruling of the court he then and there excepted. This testimony, the objection and the ruling are set forth in the bill of exceptions, and form the subject of the tenth assignment of error.

As it was not denied that Hurlin died immediately from a wound intentionally inflicted by the accused, the issue to be determined by the jury was whether the accused was actuated by a malicious motive or acted in self-defence.

As the testimony in this issue was conflicting, or, rather, the defendant's evidence not yet having been given, as it might well have been anticipated that the testimony would be conflicting, it seems to have been the theory of the prosecution

that the evidence in question in the tenth assignment tended to show such a state of enmity on the part of the accused towards the deceased as to warrant the jury in finding that the act of the accused in shooting the deceased was the result of a pre-existing unfriendly feeling.

The general rule on the subject of permitting testimony to be given of matters not alleged is that nothing shall be given in evidence which does not directly tend to the proof or disproof of the matter in issue. And it was said by Mr. Best in the ninety-second section of "Principles of Evidence," that whether a given fact, bearing indirectly on a matter in issue, should be received as circumstantial, or rejected as conjectural evidence, is often a question of extreme difficulty.

In the proof of intention it is not always necessary that the evidence should apply directly to the particular act with the commission of which the party is charged; for the unlawful intent in the particular case may well be inferred from a similar intent, proved to have existed in other transactions done before or after that time. Thus, upon the trial of a person for maliciously shooting another, the question being whether it was done by accident or design, evidence was admitted to prove that the prisoner intentionally shot at the prosecutor at another time, about a quarter of an hour distant from the shooting charged in the indictment.

So, also, in cases of homicide, evidence of former hostility and menaces on the part of the prisoner against the deceased are admissible in proof of malice. 3 Greenleaf, sec. 15, Redfield's edition.

But in the case of *Farrer* v. *State*, 2 Ohio St. 54, it was held, upon full consideration, that on an indictment charging the prisoner with poisoning A, in December, 1851, it is error to permit evidence in chief to show that she poisoned B in the month of August previous.

So, in *Commonwealth* v. *Horton*, 2 Gray, 354, it was held by the Supreme Judicial Court of Massachusetts that, under an indictment charging one act of adultery at a particular time and place, evidence of other acts of a similar character at other times and places is inadmissible, the court saying:

"It is a universal rule, in the trial of criminal cases, that nothing shall be given in evidence which does not directly tend to the proof or the disproof of the matter in issue. The prosecuting officer is not, therefore, allowed to give evidence of facts tending to prove a similar, but distinct offence, for the purpose of raising an inference or presumption that the accused committed the particular act with which he is charged."

But even if it be conceded that prior conduct of the accused may be put in evidence in order to show that he had feelings of enmity towards the deceased, we are clear that the testimony was wrongfully admitted in the present case, because the time of the incident testified to, more than a month before the homicide, was too remote, and because the incident itself did not tend to prove any feeling of enmity on the part of Bird to the deceased, such as to warrant the jury in inferring that the subsequent homicide was malicious and premeditated. The particular violence threatened was not against the deceased, but against another member of the party; and the vulgar language attributed to the accused was of a character not unusual among coarse men engaged in such an adventure.

The only doubt we feel is whether the evidence, though improperly admitted, was of sufficient importance to call for a reversal of the judgment. However, we cannot say that the testimony did not suffice to turn the scale against the prisoner. And we are the more inclined to sustain this exception, because the error was immediately followed by another and similar one, appearing in the fourteenth assignment of error.

The bill of exceptions discloses that, over objection, Scheffler was permitted to testify as follows:

"That in the latter part of March, 1899, after Patterson had been carried to Anvik, Bird made a trip up the river and came back with a man named Smith; that Smith left, and the next day after that Bird was very disagreeable and tried to pick a fight with the woman Naomi Strong; he acted very funny. You had to watch him and be careful. He got awful good after that, and everything was just so. It was 'Charles this' and 'Naomi that.'"

The matters so testified to took place six months after the

alleged murder, and would seem to have no bearing, direct or remote, upon the guilt of the accused, but still may have tended to persuade the jury that Bird was a dangerous man and likely to kill any one who excited his anger.

We think there was substantial error in the first paragraph of the instructions given the jury by the court at the request of the Government, and which was as follows:

"The court instructs the jury, if they believe from the evidence beyond a reasonable doubt that the defendant Homer Bird, on the 27th day of September, 1898, at a point on the Yukon River, about two miles below the coal mine known as Camp Dewey and about 85 miles above Anvik and within the District of Alaska, shot and killed one J. H. Hurlin, and that said killing was malicious, premeditated and willful, and that said killing was not in the necessary defence of the defendant's life or to prevent the infliction upon him of great bodily harm, then it is your duty to find the defendant guilty as charged in the indictment."

The bill of exceptions shows that to "this instruction the defendant then and there excepted for the reason that the same is erroneous because not qualified by the further charge that if the defendant believed, and had reason to believe, that the killing was necessary for the defence of his life or to prevent the infliction upon him of great bodily harm, then he was not guilty."

It is well settled that the defendant has a right to a full statement of the law from the court, and that a neglect to give such full statement, when the jury consequently fall into error, is sufficient reason for reversal. The numerous decisions to this effect are cited in Wharton on Criminal Law, vol. 3, sec. 3162, 7th ed. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.

It has sometimes been said that if the judge omits something and is not asked to supply the defect, the party who remained voluntarily silent cannot complain. But such a principle can-

not apply to the present case, because the judge's attention was directly called by the Government's request to the question of self-defence, and because the defect in that request was then and there pointed out by the defendant's counsel in their exception. The question involved in that instruction was a fundamental one in the case; indeed, it may be said that the defendant's sole defence rested upon it. The defendant, as shown in the bill of exceptions, had testified to his own belief that his life was in danger, and to the facts that led him so to believe; but by the instruction given the jury were left to pass upon the vital question without reference to the defendant's evidence. *Beard* v. *United States*, 158 U. S. 550, 554, 559.

As the trial judge allowed and signed a bill of exceptions to his instruction in this behalf, it cannot be fairly presumed that the error was healed by any modification or correction made in some other and undisclosed part of his charge.

> *The judgment of the District Court of the United States for the District of Alaska is reversed, and the cause is remanded to that court with directions to set aside the verdict and award a new trial.*