**Howard D. LEVINE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14442.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 15, 1958.

Decided Nov. 18, 1958.

Mr. Edward L. Genn, Washington, D. C., with whom Mr. H. Mason Welch, Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S.

Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Appellant, referred to herein as defendant, seeks reversal of his conviction on an indictment under § 22–1304, D.C. Code (1951) charging that he "did falsely represent himself to be a police officer and attempted to perform the duty and exercise the authority pertaining to such office." [1] A bill of particulars specified *inter alia* that "the defendant represented himself as a police officer from No. 4 Precinct."

Some seven months before the events leading to the indictment defendant had been admitted to the bar and thereafter had become counsel for one of several young men indicted for rape. It appears that he went to the residence of the victim of the alleged rape to obtain a statement from her. According to her testimony, that of her ten year old daughter, and also that of a man who lived at times at the same place, defendant represented himself on this occasion to be a police officer from No. 4 Precinct. Defendant took the stand and denied making any such representation; he testified in summary that what he said was that he was an attorney for one of the boys involved in the affair, that he had the right to talk to her, the alleged victim, and she to him, that he was an "officer of the Court and that it was my duty to find out what happened so that I could protect my client."

▮▮ With this conflict in the evidence to be resolved by the jury, defense counsel requested several instructions prepared and submitted in accordance with Fed.R.Crim.P. 30, 18 U.S.C.A. [2] They overlapped in part so each need not have been granted. But all relating to the conflict were denied. The learned trial judge charged the jury, insofar as now material, only as to the factors the prosecution must establish beyond a reasonable doubt, namely, that defendant falsely represented himself to be a police officer and attempted to perform the duty or to exercise the authority of such an officer, in this instance to obtain a statement in a manner a police officer might employ. Notwithstanding the correctness of so charging the jury the rule is that it is reversible error for the court to refuse on request to instruct also as to defendant's theory of the case. This rule is not confined to cases involving self-defense, illustrated by Meadows v. United States, 65 App.D.C. 275, 82 F.2d 881; or to a special defense such as entrapment, illustrated by Lutfy v. United States, 9 Cir., 1952, 198 F.2d 760, 33 A.L.R.2d 879; or to situations where a lesser offense than that specified in the indictment may be found by the jury, as in State v. Jones, 1948, 52 N.M. 235, 195 P.2d 1020; it applies as well to situations where special facts present an evidentiary theory which if believed defeats the factual theory of the prosecution, as in the case at bar.[3] Illustrative is Calderon v. United States, 5 Cir., 1922, 279 F. 556, 558, where the court said:

"Where the evidence presents a theory of defense, and the court's attention is particularly directed to it, it is reversible error for the court to refuse to make any charge on such

1. The code provision referred to reads in pertinent part as follows:

"Whoever falsely represents himself to be a * * * police officer * * * and attempts to perform the duty or exercise the authority pertaining to any such office or character * * * shall suffer imprisonment in the penitentiary for not less than one year nor more than three years."

2. For example, defendant's request No. 7 omitting names here, stated:

"You are instructed that if you find from the evidence that the defendant * * * told * * * that he was an attorney and officer of the Court and if you further find that the defendant did not tell * * * that he was a police officer, then you must find the defendant not guilty as charged."

3. Of course it is not necessary that the defense convince the jury of the truth of its evidence, but only that a reasonable doubt arises as to the facts necessary to a conviction.

theory. Bird v. United States, 180 U.S. 356, 361, 21 S.Ct. 403, 45 L.Ed. 570; Hendrey v. United States, 6 Cir., 233 F. 5, 18, 147 C.C.A. 75; Liner v. State, 124 Ala. 1, 7, 27 So. 438; Banks v. State, 89 Ga. 75, 14 S.E. 927."

And in Marson v. United States, 6 Cir., 1953, 203 F.2d 904, 912, it is said:

> [W]here a defendant in a criminal case presents a theory supported by the evidence, and the court's attention is particularly directed to it, it is reversible error to refuse to give a charge on such a theory.

See, also, McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21; United States v. Indian Trailer Corp., 7 Cir., 1955, 226 F.2d 595; State v. Barnes, 1948, 164 Kan. 424, 190 P.2d 193.[4]

The case before us seems peculiarly one for the application of this rule. The jury should not have been influenced by the court's charge to concentrate unduly upon one side of the conflicting evidence as to whom defendant represented himself to be. It was error to deny the right to a more balanced charge, accorded the defense by the decisions, when the request therefor had the support of substantial evidence.

The court also denied an instruction that to convict him the jury must find that defendant's alleged false representation and performance of duty or exercise of authority was "with the intent to defraud" and the alleged false representation was "relied upon."

We treat first the element of intent. The statute, supra note 1, does not in terms include intent to defraud, or a felonious or criminal intent, in its definition of the crime. But the notable opinion of the Supreme Court in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 244, 96 L.Ed. 288, demonstrates that a criminal intent is an essential ingredient of crimes derived from the common law notwithstanding their modern statutory definitions omit so to state. The Court discussed the basic principle involved, that crime is generally constituted only by the "concurrence of an evil-meaning mind with an evil-doing hand," and continued,

> As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation.

See, also, Carter v. United States, 102 U.S.App.D.C. 227, 235, 252 F.2d 608, 616.

Morissette involved a violation of 18 U.S.C. § 641 which provides that "whoever embezzles, steals, purloins, or knowingly converts" government property shall be punishable by fine and imprisonment; the Court accordingly was applying a common law principle to a common law type of crime. It was recognized, however, that the principle was not of universal application. The Court said it does not apply to offenses "new to general law, for whose definition the courts have no guidance except the Act." These "depend on no mental element but consist only of forbidden acts or omissions" such as the selling of impure foods, or violation of health and welfare regulations incident to the industrial revolution, or offenses which

---

4. A good statement of the reasoning that supports the rule appears in Dozier v. State, 1913, 12 Ga.App. 722, 78 S.E. 203–204:

"If no request is made to do so, it is not generally reversible error to fail to charge on a theory arising solely from the prisoner's statement; but when a pertinent and legal request is presented for an instruction upon such a theory, it is as much reversible error to refuse to do so as it would be to refuse to give an instruction based upon a theory arising from the sworn testimony in the case. If this were not true, the accused could be deprived of the benefit of the statement which the law authorizes him to make in his own defense, and which is often the only means by which the accused can rebut a prima facie case against him made by the state's evidence."

do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty.

342 U.S. at page 255, 72 S.Ct. at page 246. As explained in Morissette, the decisions in United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619, United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, and United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48, involved crimes of the latter class, where the Court would not read intent into a statutory definition which omitted it.

■■ We come then to the decisive question whether the crime in the present case falls into the class illustrated by the ruling in Morissette, or is like the cases of Behrman, Balint, and Dotterweich. More pointedly—is this crime a common law offense, such as those against the state, the person, property, or public morals, or is it one "new to general law"? We think the answer does not necessarily depend upon whether the crime as now defined in our code was precisely so defined in the common law; it would still come within the Morissette category if it had definite roots in the common law. As to this we find clear evidences of the offense of false personation in early statutes, cases, and treatises on criminal law, set forth in some detail in the margin.[5] Various forms of the offense were either public wrongs, misdemeanors, or felonies. This

5. In 1839 it was provided by statute, 2 & 3 Vict. cap. 47 sec. XVII, for the city of London that:

"every Person, not being a Constable of the Metropolitan Police Force * * * who shall put on the Dress or take the Name, Designation, or Character of any Person appointed as such Constable, for the Purpose of thereby obtaining Admission into any House or other Place, or of doing or procuring to be done any Act which such Person would not be entitled to do or procure to be done of his own Authority, or for any other unlawful Purpose, shall, in addition to any other Punishment to which he may be liable for such Offence, be liable to a Penalty not more than Ten Pounds."

In 1792, because of the increased use of false and counterfeit certificates of the characters of servants, an act for preventing the counterfeiting of certificates of the characters of servants, 32 Geo. 3, c. 56, was enacted, providing:

"if any person or persons shall falsely personate any master or mistress, or the executor, administrator, wife, relation, housekeeper, steward, agent or servant of any such master or mistress, and shall either personally or in writing, give any false, forged, or counterfeited character to any person offering him or herself to be hired as a servant into the service of any person or persons, then, and in such

case, every such person or persons so offending shall forfeit * * * " [the penalty of twenty pounds or be confined in prison at hard labor not to exceed three months].

The use of the word "felony" is coupled with "personation" in an act for amending the Laws respecting the Solemnization of Marriages in England, 4 Geo. 4 c. 76 s. XXI, which provided in part:

"If any Person, falsely pretending to be in Holy Orders, shall solemnize Matrimony according to the Rites of the Church of England; every Person knowingly and wilfully so offending, and being lawfully convicted thereof, shall be deemed and adjudged to be guilty of Felony * * *."

Blackstone's Commentaries, Public Wrongs (Book IV), 128, states that:

"by statute 4 W. & M. c. 4 to personate any other person (as bail) before any judge of assize or other commissioner authorized to take bail in the country, is also felony."

The statute, enacted in 1692, which Blackstone refers to (4 W. & M. c. 4) is in pertinent part as follows:

"And be it further enacted by the authority aforesaid, That any person or persons who shall before any person or persons impowered by virtue of this act, as aforesaid, to take bail or bails, represent or personate any other person or persons, whereby the person or persons so represented and personated may be liable

legal history shows that this type of offense is not akin to those enacted to aid in the enforcement of health and welfare regulations, or to enforce care or to punish inaction where one has a duty. False personation is in the nature of "positive aggressions or invasions, with which the common law so often dealt * * *." Morissette v. United States, supra, 342 U.S. at page 255, 72 S.Ct. at page 246. These considerations, coupled with the statutory treatment of this particular offense as one punishable only by imprisonment—showing the seriousness with which the legislature regarded the crime—leads us to conclude that the common law concept of crime as a combination of an evil state of mind with the doing of an evil act applies to this felony. Accordingly, proof of criminal intent was required—not necessarily proof of "intent to defraud," as the request was phrased, but of a criminal or felonious intent nevertheless. Since an instruction on the point was duly requested, it was error to fail to instruct the jury that in order to convict it must find not merely that the accused acted as charged in the indictment but that he did so with criminal or felonious intent. "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." Morissette v. United States, supra, 342 U.S. at page 274, 72 S.Ct. at page 255. The Supreme Court there quoted from People v. Flack, 1891, 125 N.Y. 324, 334, 26 N.E. 267, 270, 11 L.R.A. 807, as follows:

"It is alike the general rule, of law and the dictate of natural justice, that to constitute guilt there must not only be a wrongful act, but a criminal intention. Under our system (unless in exceptional cases), both must be found by the jury to justify a conviction for crime. However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury. * * *"

■ We reach a different conclusion, however, as to the necessity for the prosecution to establish that the parties to whom the alleged false representation was made relied upon it. We have no reason to add this element to the congressional definition of the crime. This is a different matter from the question of criminal intent; a just conception of criminal law, in the light either of statutory or common law, does not necessitate implying here an element of reliance when Congress has omitted it.

Because of the refusal of the request for an instruction as to the defendant's theory of the case, and as to the necessity of proof of criminal intent, we shall grant a new trial

Reversed.

---

to the payment of any sum or sums of money for debt or damages to be recovered in the same suit or action, wherein such person or persons are represented and personated, as if they had really acknowledged and entered into the same, being lawfully convicted thereof, shall be adjudged, esteemed, and taken to be felons, and suffer the pains of death * * *."

In Bishop, Criminal Law, 408–09 (1858), the author states that "various other methods of obstructing public justice have appeared, and been held to be indictable at the common law. Some of which other methods are the following; * * * personating an officer, or falsely pretending to be an officer, or a juryman * * * and acting as such

* * *." The author gives a reference to an early English case, Anonymous, 82 Eng.Rep. 421, which states that: "Upon a jury retorned, a stranger who was not one of the jury, caused himself to be sworn in the name of one who was of the jury. And he against whom the verdict passed, moved the Court for a new trial upon that matter. But the Court would not give way to it; because it appeareth to them that he is sworn upon record. *But all the Court agreed that he might be indicted for that misdemeanour * * *."* [Emphasis added.]
See, also, Russell, Crimes and Misdemeanors (1843); East's, Pleas of the Crown 1004 (1806).