McCleveland BAILEY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 5607.

District of Columbia Court of Appeals.

Argued June 29, 1971.

Decided Sept. 28, 1971.

David C. Niblack, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

Reversal of the paternity judgment in this case is required because of failure, on request, to instruct on the theory of defense.[1] A new trial is, therefore, appropriate.

■ At issue is the critical period in which conception could have occurred. According to the young mother's testimony, the child was conceived after an October 5 menstrual period. The appellant, however, contended that conception may have occurred prior to that time. He testified that the mother, upon returning from about a two-week trip to North Carolina during August and the first days of September, told him "that she had not been on her period yet and she [thought] something [was] wrong but she didn't know for sure." He denied having seen her from the latter part of July until her return before school began on September 8. It is appellant's testimony which forms the basis for the theory that the child was conceived by another before the critical period charged. Since the factual issue is highlighted by other circumstances revealed in the testimony, we are unable to say that failure to give the requested instruction was harmless.

The pertinent facts reveal that appellant and complainant began having sexual relations about two weeks after they met. Complainant testified that during their relationship they had intercourse approximately "twice a week" at her home and that only once did they go out on a date. She also testified that she visited her

grandparents in North Carolina during the last two weeks of August and the first part of September and that she had met some young men there who "sometimes" came over to her house although she didn't go out with them.

Appellant testified that when complainant returned from North Carolina she declined to have relations with him because she hadn't had her menstrual period yet. He also testified that she subsequently told him she had her period and they resumed sexual relations in the latter part of October.[2]

The complainant testified that she had never missed a period and that her last one before learning she was pregnant was on October 5. This was the basis for the trial court's determination that the critical period during which conception could have occurred was October 5–26.

The child was born on May 26, approximately seven months from the critical period charged at trial and nine months after complainant visited North Carolina. Although no medical evidence was introduced to establish that the child was born prematurely, we are asked to view the record as conclusively establishing that fact. We cannot do so.

Although some testimony was given by complainant and her mother which tended to show that the child was premature— i. e., he weighed 4 pounds 6 ounces (approximately 2000 grams) at birth and remained in the hospital for two weeks after the mother was released—we note that it was also possible for the child to weigh that amount at birth after a normal gestation period. Indeed, in excess of 10 percent of the births reported between 1959 and 1961 in a city such as the District of Columbia were full-term at a weight of 2000 grams. Moreover, factors such as smoking, nutrition, and many other considerations relevant to the mother's physical condition do

---

1. It is, therefore, unnecessary to treat the other issues raised on appeal as they are not likely to arise in the new trial.

2. They continued having relations until about six months after the child was born.

contribute to offspring of such weight at full-term gestation. *See* Battaglia, Intra-uterine Growth Retardation, 106 American Journal of Obstetrics and Gynecology, 1103 (April 1, 1970).

In addition to usual instructions, the court charged the jury that they could not find appellant to be the father unless they found that he had had sexual intercourse with the complainant during the critical period of October 5–26, and that complainant did not have intercourse with any other person during that period. Appellant's counsel then requested that an additional instruction be given that appellant could not be adjudged the father if the jury found "that conception could have taken place at any time other than the critical period alleged by the complainant". In the ensuing dialogue between the court and counsel, the court erroneously stated, "We don't have any other evidence on that, that it occurred at any other time than the period indicated." Thus, the court denied the requested instruction.

█ It is fundamental to our system of justice that the defense is entitled to have its theory of the case given to the jury if sufficient evidence has been presented to support its relevant contentions. Bird v. United States, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570 (1901); Levine v. United States, 104 U.S.App.D.C. 281, 261 F.2d 747 (1958); Metropolitan Life Insurance Co. v. Adams, D.C.Mun.App., 37 A.2d 345 (1944). Taking into account all the circumstances of this case, appellant's theory as to the time of conception, was, on the evidence, a matter to be submitted to the jury.

Three testimonial factors are critical to our decision. They are: (1) appellant's testimony that complainant told him when she returned from vacation that she had missed a period; (2) complainant's description of her relationship with her male friends while in North Carolina, which was in some way similar to her relationship with appellant; and (3) the fact that full-term gestation for the child was not excluded as a medical possibility. In our view these factors compelled the giving of an instruction on the theory of defense.

Accordingly, the judgment of paternity is

Reversed and the case remanded for a new trial.