Steven L. FEARWELL, Appellant,

v.

UNITED STATES, Appellee.

No. 03–CF–662.

District of Columbia Court of Appeals.

Submitted Oct. 6, 2005.
Decided Nov. 10, 2005.

Sara E. Kopecki, Washington, DC, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Ann H. Petalas and L. Jackson Thomas II, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB, RUIZ, and REID, Associate Judges.

REID, Associate Judge:

■  After a jury trial, appellant, Steven L. Fearwell, was convicted of willfully failing to appear in court (with respect to an assault charge), in violation of the District of Columbia bail reform statute, D.C.Code § 23–1327(a) (2001). On appeal, Mr. Fearwell challenges the trial court's refusal to give his requested jury instruction regarding the definition of willfulness under the statute. Specifically, he requested an instruction that special circumstances affected his ability to appear in court. He also argues in essence that the trial court committed reversible error when it failed to give the jury a requested curative instruction after the prosecutor argued facts not in evidence during the government's rebuttal argument. We conclude that the requested jury instruction on the meaning of willfulness should have been given because it was an accurate statement of a legal principle. Furthermore, we hold that the combination of the failure to give the requested instruction regarding a controlling principle of law, and the government's improper rebuttal argument based on a fact not in evidence resulted in substantial prejudice to Mr. Fearwell. Consequently, we reverse the judgment of the trial court and remand this case for a new trial.

## FACTUAL SUMMARY

The government presented evidence showing that on August 29, 2002, Mr. Fearwell signed a condition of release form which included a written notice to reappear in the Superior Court of the District of Columbia on November 14, 2002, for a status hearing in connection with a pending assault charge. On November 14, 2002, when he failed to appear, a bench warrant was issued, and Mr. Fearwell was arrested on November 28, 2002.

Trina Arguelles, Mr. Fearwell's girlfriend with whom he lived, testified in his behalf. She stated that Mr. Fearwell was HIV positive and due to this, "he suffers from fatigue." In November 2002, his health was "[v]ery poor," he was "very weak," and "it was difficult for him to move." "Within the whole period, he was very weak." During the month of November, when he went to the methadone-maintenance clinic, he "barely made it."

Mr. Fearwell testified that in November 2002, due to the advanced stages of HIV, he was in "very poor" health, "was on oxygen, . . . was very fatigued and basically bedridden." During this time, he was "barely able to feed" and bathe himself. He was "get[ting] take-home medication" due to his illness. On November 14, 2002, he was bedridden and did not go to the clinic. He was aware of the November 14 court date and because he "was incapacitated and . . . wouldn't be able to attend" court, he called Pretrial Services. He was informed that without the docket numbers, Pretrial Services could not forward his case. On cross-examination, Mr. Fearwell testified that he was aware of the penalties for not showing up to court on November 14, 2002, but that he "was unable to come in that day."

Mr. Fearwell requested the following instruction be added to the "bail jumping" violation jury instruction:[1]

There is evidence that the defendant was too disabled by AIDS to attend court on November 14, 2002. If you find special circumstances; namely that a medical condition existed causing the defendant to be unable physically to attend court on that date, you may consider that special circumstance[ ] in determining whether the government has proved beyond a reasonable doubt that

the defendant's failure to appear was willful.

The trial court refused to give the requested instruction because defense counsel impermissibly put the facts of Mr. Fearwell's testimony in the form of an instruction. The trial court proposed the following instruction: "As to the charge of failure to appear in court, Mr. Fearwell's defense is that he was physically unable to come to court on November 14, 2002; and, therefore, his failure to appear was not willful." Both parties agreed to this instruction. However, government counsel reminded the trial judge that defense counsel "provided another [instruction] regarding the definition of 'willful.'" The judge responded: "Right. I don't intend to give that." Instead, the judge announced his "inten[tion]" to give the theory of the case, which says that [the failure to appear] was not willful." Defense counsel called the judge's attention to case law, specifically *Foster v. United States*, 699 A.2d 1113 (D.C.1997). When the judge inquired as to why it would not be sufficient to tell the jury "that his defense is that he was not willful because he was unable to come [to court]," defense counsel replied: "The defendant's theory of the case is not actually an instruction. It's more like an advisory [sic]." Government counsel expressed "concern" that the jury not be left "with an improper view of what the law is . . . ." She argued that Mr. Fearwell had to show "that he is physically unable to show up[,] [n]ot that it was hard for him -- not just that he didn't have to show up because he was sick and bedridden, but that he was physically unable."

After reading the *Foster* decision, the trial court stated that "it didn't change my view as to whether the proposed instruction should be given." The court expressed the belief that *Foster* turned on a

1. *See* Criminal Jury Instructions for the District of Columbia, No. 4.92 (4th ed. 1993).

trial judge's "ruling [in a bench trial] which might have been inconsistent with controlling law on what constitutes willfulness." The trial court continued:

I believe that the instruction on willfulness in the Red Book instruction is an accurate statement of the law. I believe the instruction I am agreeing to give on the defendant's theory of the case accurately puts his theory of the case before the jury, that his failure to appear was not willful as defined by the law. And anything else about why he was unable to appear or whether the jury should credit that testimony is for the finder of fact and for argument of counsel.

So, I am not going to give the proposed instruction.

During its rebuttal closing argument, the government stated:

The defendant told you he chose not to come to court that day. He knew he had to come to court that day. He told you it was not impossible to come to court. He told you he was not in the hospital. He was not under a doctor's care. And as Trina told you, during that month he was going out to the clinic that day.

Defense counsel objected stating, "Mr. Fearwell never testified that he could get to court that day." The trial court overruled the objection, saying: "I don't think [the government] unfairly mischaracterized the evidence." The record shows that during cross-examination of Mr. Fearwell, the following exchange occurred:

2. Nothing in the record before us can be fairly construed as an admission by Mr. Fearwell that he could have attended court on November 14, 2002, or that he was able to get medical documentation on that day which then could have been conveyed to the court on November 14, 2002.

Q  And you testified in November you knew that you had to come into court; correct?

A  I signed a statement to reappear, yes.

Q  And you knew what the penalties were if you didn't show up at court that day; correct?

A  Yes, I did.

Q  And on that day you chose not to come into court; correct?

A  No. It's not a matter of choosing, I was unable to come in that day.[2]

Defense counsel asked the trial court "to advise the jury to strike [the prosecutor's statement that Mr. Fearwell chose not to come into court] because—or allow [the defense] to address it again." Defense counsel then "ask[ed] that the next instruction to the jury be that their recollection controls." The trial judge replied: "It's pretty close to the first instruction. I will give it to them but not the first."

Mr. Fearwell was sentenced to eighteen months' imprisonment on the failure to appear charge under the bail reform statute. He was found not guilty on the assault charge.

## ANALYSIS

Mr. Fearwell argues that the trial court failed to give a jury instruction regarding the defense of special circumstances affecting his ability to appear in court. The government maintains that Mr. Fearwell consented to the trial court's final failure to appear instruction and cannot now argue in favor of a contrary position.[3]

3. In addition, the government contends that Mr. Fearwell "did not adequately alert the trial judge to the rather specific error about which he now complains." This contention is unsupported by the record. It is clear from the record that after defense counsel's proposed instruction was denied, defense counsel continued to press for the requested instruc-

■ To convict a person under the failure to appear section of the bail reform statute, " 'the trier of fact must find (1) that the defendant was released pending trial or sentencing, (2) that he was required to appear in court on a specified date or at a specified time, (3) that he failed to appear, and (4) that his failure was willful.' " *Foster, supra,* 699 A.2d at 1115 (quoting *Trice v. United States,* 525 A.2d 176, 179 (D.C.1987)); *see also* D.C.Code § 23–1327(a). Mr. Fearwell's request for a special circumstances instruction was directed at the fourth element of a failure to appear case.

■ "In determining whether the requested defense instruction was properly denied, we must review the record in the light most favorable to [the defendant]." *Simms v. United States,* 867 A.2d 200, 204 (D.C.2005) (citing *Adams v. United States,* 558 A.2d 348, 349 (D.C.1989)). A defendant is " 'entitled to an instruction on any issue fairly raised by the evidence . . . [and a] special instruction is warranted when there is evidence of special facts sustaining a rational defensive theory.' " *Id.* (quoting *Martin v. United States,* 452 A.2d 360, 362 (D.C.1982)) (inner quotations omitted). We have recognized that a defendant may raise an affirmative defense to a "bail jumping" charge and that the defendant has the burden of proof as to that defense. *See Raymond v. United States,* 396 A.2d 975, 978 (D.C.1979).

In *Raymond,* we stressed the importance of the special circumstances defense to an alleged failure to appear violation of the bail reform statute. We said: "[i]f there exist special circumstances that explain the failure to appear, the individual relying on those circumstances must bear the burden of showing them." *Id.* And, we

reversed and remanded that case because, assuming that the trial court credited the appellant's special circumstances testimony, the government would not have sustained its burden to prove a willful failure to appear; whether the trial court believed and credited the appellant's special circumstances testimony was unclear to us.

Here, defense counsel called the trial judge's attention to our opinion in *Foster, supra.* The judge regarded *Foster* as "an unusual case because it was a bench trial," and concluded that: "because the judge gave reasons for the ruling which might have been inconsistent with controlling law on what constitutes willfulness, the [Court of Appeals] felt the need to remand to determine what the judge found with respect to the credibility of the testimony." The judge went on to state, "I believe that the instruction on willfulness in the Red Book instruction is an accurate statement of the law." Furthermore, the judge said: "I believe that the instruction I am agreeing to give on the defendant's theory of the case accurately puts his theory of the case before the jury, that his failure to appear was not willful as defined by the law. And anything else about why he was unable to appear or whether the jury should credit that testimony is for the finder of fact and for argument of counsel."

■ The trial judge may have taken this position because we did not explicitly and categorically state in *Foster* (there was no need to do so because of a bench trial where the judge is presumed to know the law) that, as a principle of controlling law, a defendant is entitled to a jury instruction that special circumstances articulated by a defendant, if believed by the factfinder, may constitute an affirmative

---

tion and referred the court to case law that supported an instruction on willfulness. *See Allen v. United States,* 495 A.2d 1145, 1150 (D.C.1985) (outlining the steps by which a party may request a jury instruction under D.C. Super. Ct. Crim. R. 30).

defense to the failure to appear under the bail reform statute; and that the defendant bears the burden of proving those circumstances. However, the burden to establish willfulness remains with the government. Since there is a distinction between telling a jury what the controlling principles of law are, and informing a jury of the defendant's theory of the case, we now hold that, if there is evidence—however weak—to support it, a defendant is entitled to a requested instruction that he has presented evidence of special circumstances which prevented him from appearing in court on the scheduled date and time, and that if the jury credits that evidence, this may create a reasonable doubt concerning whether the government has proven willfulness beyond a reasonable doubt. *See Raymond, supra,* 396 A.2d at 978; *Foster, supra,* 699 A.2d at 1115.

██ We now turn to Mr. Fearwell's request for a special circumstances instruction in this case. We have adhered to the legal principle that "[t]he trial court has broad discretion in formulating jury instructions, 'and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law.'" *Jung v. George Washington Univ.,* 875 A.2d 95, 110 (D.C.2005) (citation omitted). Moreover, a party is entitled to a requested instruction only if there is evidence in the record to support the request. *See Nelson v. McCreary,* 694 A.2d 897, 901 (D.C.1997). Given the trial testimony of Mr. Fearwell and Ms. Arguelles regarding Mr. Fearwell's very poor health in November 2002, and Mr. Fearwell's testimony that he was physically unable to attend court on November 14, 2002, there was sufficient evidence to warrant a special circumstances instruction. Even when read and considered as a whole, the instructions given to the jury on the bail jumping charge did not "fairly and accurately" apprise jurors of a controlling principle of law, that they could examine whether special circumstances precluded Mr. Fearwell from appearing in court on November 14, 2002. *See Jung, supra,* 875 A.2d at 110; *Psychiatric Inst. of Washington v. Allen,* 509 A.2d 619, 625 (D.C.1986) (citations omitted). The instruction on the theory of the defense, as noted, is not an instruction on the law, and it did not set out what is meant by special circumstances. Based on the reasoning in *Foster,* it follows that if the jury believed Mr. Fearwell's testimony that his illness made it physically impossible for him to appear in court, the government's prima facie case that Fearwell's absence was "willful" (that is, deliberate and intentional), was rebutted as a matter of law. *Foster, supra,* 699 A.2d at 1116.

██ The combination of the failure to give the requested instruction plus the prosecutor's inaccurate rebuttal statement, "[t]he defendant told you he chose not to come to court that day," constituted substantial prejudice to Mr. Fearwell, and may well have influenced the jury's verdict.[4] Mr. Fearwell contends that the prosecutor's statement was improper and requires reversal of his conviction. We have said that "'[i]t is improper for an attorney to make an argument to the jury based on facts not in evidence or not reasonably inferable from the evidence.'" *Finch v. United States,* 867 A.2d 222, 229 (D.C.2005) (quoting *Morrison v. United States,* 547 A.2d 996, 999 (D.C.1988)). During cross-examination of Mr. Fearwell, the prosecutor asked: "And on that day

---

4. We focus on the impact of the prosecutor's rebuttal argument on the jury as it relates to prejudice to the defendant; we do not draw any conclusion as to whether the prosecutor deliberately or intentionally misstated Mr. Fearwell's response.

you chose not to come into court; correct?" Mr. Fearwell answered: "No. It's not a matter of choosing. I was unable to come in that day." When the prosecutor subsequently told the jury in rebuttal argument, "[t]he defendant told you he chose not to come to court that day," she clearly "ma[d]e an argument to the jury based on facts not in evidence" or even reasonably inferable from the evidence presented. *Finch, supra,* 867 A.2d at 229. In fact, the prosecutor argued exactly the opposite of what Mr. Fearwell said, that "[i]t's not a matter of choosing; I was unable to come in that day." During direct examination, Mr. Fearwell clearly stated that he "was incapacitated and ... wouldn't be able to attend" court. Because the evidence showed the opposite of what the prosecutor argued, we cannot conclude that the prosecutor's statement was "reasonably inferable from the evidence." *Finch, supra; see also Chatmon v. United States,* 801 A.2d 92, 101–102 (D.C.2002) ("Inappropriate comments by the government 'are looked upon with special disfavor when they appear in the rebuttal because at that point defense counsel has no opportunity to contest or clarify what the prosecutor has said.' ") (citation omitted).

▮▮▮▮ Since the prosecutor's comment was improper, we turn to the question of substantial prejudice. " 'The applicable test to determine whether [improper prosecutorial comments] caused substantial prejudice is whether we can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judge was not substantially swayed by the error.' " *Diaz v. United States,* 716 A.2d 173, 181 (D.C.1998) (alteration in original) (quoting *Dyson v. United States,* 418 A.2d 127, 132 (D.C.1980)). We must consider the following factors: "1) the gravity of the impropriety, 2) its relationship to the issue of

guilt, 3) the effect of any corrective action by the trial judge, and 4) the strength of the government's case." *Chatmon, supra,* 801 A.2d at 99; *see also Diaz, supra,* 716 A.2d at 181.

The prosecutor's actions are grave in light of the fact that (a) the prosecutor's statement had a direct relationship to the issue of failure to appear and (b) the defense had no opportunity to address the prosecutor's argument after the government's rebuttal argument. Although defense counsel asked for an immediate curative instruction on the ground that the prosecutor had misstated the evidence, the trial judge refused to give the instruction; the court asserted: "I don't think [the government] unfairly mischaracterized the evidence." The judge's instruction that the jurors' recollection controlled, given during his main charge to the jury, was insufficient to alert the jury to the prosecutor's clear mischaracterization of the evidence.

Furthermore, the government's evidence on the failure to appear charge was not strong. It rested mainly on the statutory presumption, *see Foster, supra,* 699 A.2d at 1115, of willfulness due to the failure to appear on the designated date: "[A]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful." D.C.Code § 23–1327(b). If believed, however, the testimony of both Ms. Arguelles and Mr. Fearwell refuted the presumption. Ms. Arguelles stated that as a result of being HIV positive, Mr. Fearwell "suffers from fatigue" and in November 2002 his health was "very poor" and "it was difficult for him to move." Mr. Fearwell testified that he was in the advanced stages of HIV, was in "very poor health," "was on oxygen, ... and was very fatigued and basically bedridden." He maintained that on November 14, 2002, he was bedridden and did

not go to the methadone clinic. He said he was "get[ting] take-home medication" because of his illness. When the burden shifted back to the government to show willfulness by refuting the defense evidence, the government presented no additional evidence. Hence, when combined with the instructional error, the prosecutor's rebuttal statement mischaracterizing Mr. Fearwell's testimony rose to the level of "substantial prejudice." *See Diaz, supra,* 716 A.2d at 179 (citing *Dyson, supra,* 418 A.2d at 132).

Accordingly, for the foregoing reasons, we reverse the judgment of the trial court and remand this case to the trial court for a new trial on the bail jumping charge.

*So ordered.*