**Carl WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 07–CF–1098.**

District of Columbia Court of Appeals.

Submitted Oct. 7, 2010.
Decided Oct. 28, 2010.

---

James Klein, Public Defender Service, and Corinne Beckwith and Shilpa S. Satoskar, Public Defender Service, were on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, Mary B. McCord, Deborah Sines, and Elizabeth Gabriel, Assistant United States Attorneys, were on the brief for appellee.

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Following a seven day jury trial, appellant Carl Williams was convicted of one count of first-degree murder while armed in violation of D.C.Code §§ 22–2101, –4502 for the shooting death of Ephraim Agee. On appeal, he contends that the trial court committed reversible error by failing to instruct the jury in the words requested on the defense's theory of innocence. We disagree and affirm.

## I.

The government's case, prosecuted thirteen years after the death of Ephraim Agee, primarily rested on the testimony of three witnesses identifying appellant as the shooter. Appellant meticulously attacked the credibility of each of the three witnesses and was successful in highlighting their many weaknesses. At the appropriate time during the trial, appellant submitted the following proposed jury instructions on the defendant's theory of the case:

> Carl Williams has been associated with this shooting because of a longstanding rumor. The witnesses that identify Mr. Williams as the shooter are mistaken, unreliable, and their stories are inconsistent. Carl Williams did not shoot Ephraim Agee.

These declarative sentences are the equivalent of a judgment of acquittal under

Super. Ct.Crim. R. 29, and so construed, were inappropriate and quite inconsistent with presenting the case to the jury.

On government's objection to the proffered instruction, the court instructed the jury that

> [T]he defendant's theory of the case is that the witnesses that identified him as the shooter are mistaken, unreliable and their stories are inconsistent. The defendant's theory [is] that [he] did not shoot Ephraim Agee.

The court did not instruct the jury that on the first sentence of defendant's proposed jury instructions, that "Williams [was] associated with this shooting because of a long-standing rumor."[1] It also refused to instruct the jury in the absolute declarations of the next two sentences.

## II.

■ A defendant is entitled to instructions that "fairly and fully" present his theory of the case "when properly requested by counsel and when ... supported by [some] evidence." *Stack v. United States*, 519 A.2d 147, 154–55 (D.C. 1986) (quoting *Montgomery v. United States*, 384 A.2d 655, 660–61 (D.C.1978)). It is well settled that the trial court need not provide the instructions in the exact language requested. *Id.* at 154. Nor is the court to rehearse defendant's evidence. *Id.* The defendant is simply entitled to an instruction that adequately presents his theory of the case to the jury. *Id.* at 155.

■ An important, albeit somewhat obvious, caveat is that the defendant is only entitled to instructions on defenses that are recognized in the law. This is so because the purpose of providing instructions to the jury is to inform the jury of the "legal principles [it] is to apply in its deliberations." *Tyree v. United States*, 942 A.2d 629, 641 (D.C.2008) (internal citations omitted). When the trial judge in-

---

1. In addition to the court's defense theory instruction, the court gave the jury instructions on assessing the credibility of the witnesses. The court told the jury to consider a number of factors, including: the witness's demeanor, whether what the witness testified to was reasonable or unreasonable, probable or improbable, whether the witness had any particular reason not to tell the truth, whether the witness had any interest in the outcome of the case, whether the witness was a friend or enemy of other persons with an interest in the case, whether the witness had a good memory, whether the witness had an opportunity and ability to accurately observe the things he or she testified about, whether the witness appeared to understand the questions clearly and answer them directly, and whether the witness's testimony was different from the testimony of the other witnesses. The court told the jury to consider any inconsistencies or discrepancies in a witness's testimony, to consider whether the discrepancy pertained to an important or unimportant detail, and whether it resulted from an innocent error, a failure to remember, or an intentional falsehood. The court instructed the jury to con-sider any bias prejudice a witness may harbor against either party in the case. The jury was instructed to consider any prior inconsistent statements, prior convictions, probation or parole status, and any plea agreements between the witness and the government when judging the witness's credibility. When evaluating a witness's identification of appellant, the court told the jury to consider numerous factors, including, the witness's opportunity to observe the criminal acts and the person committing them, including the length of the encounter, the distance between the various parties, the lighting conditions at the time of the criminal activity, the witness's state of mind, the witness's certainty or lack thereof expressed by the witness, the length of time that elapsed between the crime and any subsequent identification, and any other circumstance that a juror deems relevant bearing on the reliability of the witness's identification. The court instructed the jury that they may consider any direct or circumstantial evidence that may identify the person who committed the offense, or support or not support the identification by the witnesses.

structs the jury on the defense theory of the case, the court "convey[s] to the jury that the defense's argument is recognized in law." *Id.* at 641; *see also Stack, supra,* 519 A.2d 147 (trial court failed to instruct the jury on the legal principles of independent cause that underpinned the defense's theory).

On occasion, we have held that the defendant is entitled to present an instruction to the jury on a specific fact or special circumstance. These holdings, however, arose from cases in which the fact at issue determines, as a matter of law, the outcome of the case. For example, in *Bailey v. District of Columbia,* 281 A.2d 440 (D.C. 1971), we held that the trial court erred by not instructing the jury on defendant's theory as to the time of conception, the critical evidentiary matter that determined whether the defendant was the father of the child in question. *Id.* at 442 ("Taking into account all the circumstances of this case, appellant's theory as to the time of conception, was, on the evidence, a matter to be submitted to the jury.").

■ Through an extremely well written brief, appellant frames his appeal by first contending that the initial sentence of his proposed jury instruction, that "Carl Williams has been associated with this shooting because of a long-standing rumor" is an affirmative defense theory, independent of defendant's theory of mistaken identity.[2] Appellant then argues that the trial judge failed to instruct the jury on this affirmative defense theory. It can then only logically follow, appellant argues, that the trial judge committed reversible error by failing to instruct the jury on the entirety of the defense theory of the case.[3]

Appellant's logic, however, has no basis in our jurisprudence.

Appellant formulates an extreme binary where if appellant was associated with the shooting because of a longstanding rumor, then appellant, as a matter of controlling law, *could not be guilty of shooting Ephraim Agee.* In essence, appellant seems to be contending that if the jury found there to be a longstanding rumor, then the witnesses' identification of appellant as the shooter was so inherently flawed that it was an "irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The facts of the case, even when viewed in the light most favorable to the defendant, *Fearwell v. United States,* 886 A.2d 95, 100 (D.C.2005) (internal citations omitted), do not warrant application of the appellant's proposed binary. Indeed, it is common sense that a long-standing rumor may co-exist with the witnesses' identification of appellant as the shooter; the two are not mutually inconsistent.

Moreover, it is a far stretch of the imagination to say that the rumor theory is somehow independent and separable from his defense of mistaken identity. Appellant's defense relies on his theory that the witnesses were mistaken and unreliable, that the witnesses were not credible. The presence, or lack thereof, of a long-standing rumor is a factor for the jury to consider when assessing a witnesses' credibility. To that extent, the trial judge provided the jury with sufficient guidance. The judge not only instructed the jury that the defense's theory was that the witnesses were mistaken, unreliable, and provided incon-

---

2. Through out his appeal, appellant uses phrases such as "affirmative explanation," "affirmative theory," "rumor defense," "other part of the theory," "affirmative defense theory," and "affirmative evidentiary theory."

3. As a matter of law, when a trial court fails adequately to present a defendant's theory of the case, the court commits reversible error. *Stack,* 519 A.2d at 154.

sistent stories, but as set forth in the fact section, also provided the jury with a plethora of factors to analyze when assessing a witness's credibility.

Our holding in *Bailey,* in which we held that a defendant is entitled to a jury instruction on a specific fact, is inapposite to this case. The existence of a long-standing rumor is not a special circumstance that, as a matter of controlling law, negates an element of first-degree murder while armed.[4]

▇ Finally, appellant fails to cite any authority that his affirmative defense or rumor defense theory is recognized in the law. Nor do we know of any such authority. In addition to the reasons stated above, appellant's arguments also fail because a judge "may properly refuse to give an instruction where no factual or legal basis for it exists." *See Frost v. United States,* 618 A.2d 653, 662 n. 18 (D.C.1992) (internal citations omitted).

### III.

Taken as a whole, the trial court instructed the jury as to the full defense theory. The court not only instructed the jury that the defense theory was that the

witnesses were mistaken, unreliable, and provided inconsistent stories, but went on to provide the jury with numerous factors to aid the assessment of a witnesses' credibility. Fully aware of the defendant's theory of the case, and the strengths and weaknesses of each witness, the informed jury found that beyond a reasonable doubt, Carl Williams shot and killed Ephraim Agee on the night of November 12, 1993. We find no reason to disturb this verdict. Accordingly, we

*Affirm.*

---

4. Appellant's reliance on *Fearwell, supra,* 886 A.2d 95, and *Levine v. United States,* 104 U.S.App. D.C. 281, 261 F.2d 747 (1958), and is misplaced. In *Fearwell,* we held that it was error for the trial court to not instruct the jury that as a matter of controlling law, a special circumstance could negate the wilfulness element of a failure to appear charge under the bail reform statute, and rebut the government's case. The jury in *Fearwell* was not instructed on a relevant legal principle that could have rendered defendant innocent. 886 A.2d at 100–01 ("We have recognized that a defendant may raise an affirmative defense to a "bail jumping" charge...."; "[A]s a principle of controlling law, a defendant is entitled to a jury instruction that special circumstances articulated by a defendant, if believed by the fact finder, may constitute an affirmative defense to the failure to appear

under the bail reform statute[.]"). In *Levine,* the jury's approach to viewing the conflicting evidence on the record determined, as a matter of law, whether the defendant violated all of the elements of the charged offense of false representation. The trial court erred by not only failing to instruct the jury on defense's theory as to how the jury should handle the conflict in evidence, but also by only instructing the jury on the factors that the prosecution needed to prove beyond a reasonable doubt. *Id.* at 282, 261 F.2d at 748 ("conflict in evidence to be resolved by the jury[;]" the rule that the trial court must instruct as to a defendant's theory of the case "applies ... to situations where special facts present an evidentiary theory which if believed defeats the factual theory of the prosecution, as in the case at bar." (internal citations omitted)).