Clifton ANTHONY, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–63.

District of Columbia Court of Appeals.

Argued Oct. 26, 2006.
Decided June 7, 2007.
Amended July 26, 2007.

Frances M. D'Antuono, Washington, DC, appointed by the court, for appellant.

David B. Kent, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Ann K.H. Simon, Ann M. Carroll, and Susan B. Menzer, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

On October 1, 1996, following a jury trial, Clifton Anthony was convicted of possession of crack cocaine with the intent to distribute it while armed (PWID-

WA),[1] possession of a firearm during a crime of violence or dangerous offense (PFCV),[2] carrying a pistol without a license (CPWOL),[3] and unlawful possession of PCP.[4] On appeal, Anthony claims, *inter alia*,[5] that during her rebuttal argument, the prosecutor twice misrepresented the testimony of a defense witness, Janice Jackson, by asserting that Ms. Jackson had incriminated Anthony of possession of a pistol when in fact she had not. More specifically, Anthony contends that the trial judge erred by overruling defense counsel's objection to the prosecutor's misrepresentation, by refusing to declare a mistrial, and by permitting the prosecution to repeat her misstatement after a bench conference at which the judge and attorneys discussed the defense objection.

The case is a very troubling one. The prosecutor's misstatement of the evidence, though presumably unintentional, directly contravened Anthony's defense to those counts of the indictment which required proof that he was armed. Moreover, the prosecutor's repetition of her misrepresentation after the bench conference precipitated by her initial misstatement compounded the problem and increased the probability of prejudice. If Ms. Jackson had in fact testified as the prosecutor in-

correctly claimed that she did, the government's case would have been far stronger than it was in fact.

"Although [Anthony] primarily find[s] fault with the prosecutor's [statement] we must review the record for legal error or abuse of discretion by the trial judge." *Gordon v. United States*, 783 A.2d 575, 589 (D.C.2001) (quoting *Irick v. United States*, 565 A.2d 26, 33 (D.C.1989)). We conclude, nevertheless, that given the sequence of events and the manner in which the trial unfolded, the judge abused his discretion by overruling the defense objection without determining, before permitting the prosecutor to repeat her misstatement, whether Ms. Jackson had in fact testified as the prosecutor asserted that she had. Since, as has now been revealed, the prosecutor's description of Ms. Jackson's testimony was false, the judge, had he known the facts, should (and undoubtedly would) have taken far stronger remedial measures than he did, and the potentially severe prejudice to Anthony's defense would have been avoided. The fact that the judge did not have the critical information at the time of his ruling cannot justify the failure to take such measures.

If the judge had known that the prosecutor had misrepresented Ms. Jackson's evidence, it would not have been a permis-

---

1. D.C.Code §§ 33–541(a)(1), 22–3202 (1981), recodified in D.C.Code §§ 48–904.01(a)(1), 22–4502 (2001).

2. D.C.Code § 22–3204(b) (1981), recodified in D.C. § 22–4504(b) (2001).

3. D.C.Code § 22–3204(a) (1981), recodified in D.C.Code § 22–4504(a) (2001).

4. D.C.Code § 33–541(d) (1981), recodified in D.C. § 48–904.01(d) (2001).

5. Anthony also asserts that the trial judge abused his discretion by admitting into evidence, over objection, proof that, fifteen months after the charged offense, Anthony was arrested again, and that on this later

occasion Anthony had in his possession twenty-two grams of crack cocaine, two pagers, and $120 in cash. Because Anthony contended that the forty-eight rocks of cocaine recovered from his possession at the time of his arrest in the case now on appeal were for his personal use, and because he thus placed in issue whether he intended to distribute the cocaine, the judge did not abuse his discretion by admitting evidence of subsequent conduct which was relevant to Anthony's intent in the present case. *See e.g., United States v. Latney*, 323 U.S.App. D.C. 417, 420, 108 F.3d 1446, 1449, *cert. denied*, 522 U.S. 940, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997).

sible exercise of discretion to permit the trial to continue without bringing the correct facts to the jury's attention. Even if we were to assume, solely for the sake of argument, that the judge did not err by declining to grant the "severe remedy" of a mistrial, *see, e.g., Peyton v. United States,* 709 A.2d 65, 69 (D.C.1998), the scuttling of the trial could have been avoided if the judge had ascertained, before ruling on the objection and Anthony's request for a mistrial, that the prosecutor's statement was in fact false. Had the judge done so, we are confident that he would have sustained the objection, and either corrected the prosecutor's misrepresentation in the presence of the jury or permitted the prosecutor to do so herself. We conclude, under the circumstances, that the judge's instruction to the jurors that their recollection controlled and that counsel's statements were not evidence was insufficient, on this record, to cure the prejudice generated by the prosecutor's misstatements. Accordingly, we reverse Anthony's convictions for PFCV and CPWOL and the "while armed" element of PWIDWA. We affirm the convictions of [unarmed] PWID and of unlawful possession of PCP.

## I.

## THE FACTS

A. *The evidence.*

It is undisputed that, at the time of his arrest, Anthony was in possession of a medicine bottle containing forty-eight rocks of crack cocaine. Although Anthony did not take the witness stand, he presented a two-fold partial defense: (1) the cocaine was for his own personal use, not for distribution; and (2) he was not armed at the time of the offense. The issues raised by the prosecutor's rebuttal argument are

relevant only to the second of these partial defenses.[6]

For present purposes, the facts relevant to Anthony's claim that he was not armed can be stated briefly. The prosecution presented evidence that in the early morning hours of April 25, 1996, Officers Donald Leach and Sean McLaughlin of the Metropolitan Police Department entered the landing of 35 Ridge Road, S.E., a building which was known by the police, and acknowledged by the defense, to be the site of frequent unlawful drug activity. McLaughlin saw a woman, later identified as Janice Jackson, on the floor above the landing. Ms. Jackson was inhaling cocaine from a pipe. Clifton Anthony, the appellant, was standing near Ms. Jackson. McLaughlin directed both Mr. Anthony and Ms. Jackson to walk down to the landing. Officer Leach testified that as Anthony proceeded down the stairs, he pulled a pistol from his waistband. According to Leach, Anthony then noticed Leach on the stairwell, and he immediately attempted to conceal the weapon by pushing it inside his waistband. Officer Leach testified that he ran up the stairs and pushed Anthony against the wall, and that Anthony dropped the pistol on the ground. Leach handcuffed Anthony, searched him, and recovered a pill bottle containing the forty-eight rocks of crack cocaine on which the PWIDWA charge against Anthony was premised.

On cross-examination, Anthony's attorney attempted to demonstrate that Leach's testimony regarding Anthony's alleged possession of a pistol was unworthy of belief. Specifically, she contended that the officer's actions, as described by Leach himself, were not the kinds of measures that a reasonable officer would have taken if he had really been confronted with the

**6.** The first partial defense has been addressed in footnote 5 to this opinion.

threat posed by an armed man in a drug haven who had pulled a pistol out of his waistband in the middle of the night. According to his own testimony, Leach did not unholster his service revolver, nor did he shout a warning to his partner that Anthony was armed. The defense also called the jury's attention to differences between the weapon that was seized by the police and introduced into evidence, namely, a .32 caliber Smith and Wesson revolver, and the description of that weapon (in police documents executed at the time or soon after Anthony's arrest) as a .38 caliber pistol. In addition, while most of the Form PD–163 arrest report was typed, the information regarding the pistol had been inserted in handwriting. In her closing argument, Anthony's attorney stated:

> I submit that there is an odor coming up off this evidence, this conduct, which [you] can't miss. This smacks of untruth. And just like the police version of the events in this case doesn't make any sense, the police paper work doesn't make any sense either, and neither do the [officers'] explanations for why this paper work is like this.

According to the defense, in other words, Officer Leach's testimony that Anthony was armed with a pistol was false, the police were unable to adhere to a consistent account, and the reference to the pistol was probably fabricated and added to the PD–163 as an afterthought.

Janice Jackson was called as a witness for the defense. Ms. Jackson testified that on the evening in question, she had smoked five $10 rocks of crack cocaine. She denied that she had purchased the drugs from Anthony. With respect to Anthony's alleged possession of a pistol, Ms. Jackson testified as follows:

> Q. And what happened to Mr. Anthony that you could see?

> A: What I could see was happening to him. The police pulled his jacket over— he was on [his] face—laying on the floor, with his face down and they pulled his hood like over his head and they took a capsule from him.

> Q: Did you see the police officer take a gun from Mr. Anthony?

> A: *No, I didn't. Matter of fact, the only gun I saw was what the police had when he ran up the steps as I was hitting the pipe.*

> Q: Okay; that police officer had his gun in his hand?

> A: Yes.

> Q: Now, the police officer that had Mr. Anthony face down on the first landing, did he have his gun out?

> A: No, he didn't.

> Q: Okay. And you said you saw the police officer that had Mr. Anthony down on the landing take a capsule from him?

> A: Yes.

> Q: *Did you see that police officer take anything else from Mr. Anthony?*

> A: *No, I did not.*

(Emphasis added.) There was thus nothing at all in Ms. Jackson's testimony to suggest that she had seen any pistol other than the service revolver which was in Officer Leach's possession. Indeed, the quoted questions and answers, and especially the answers that we have italicized, demonstrate beyond peradventure that, according to her account, Ms. Jackson saw nothing of the kind.

### B. *The rebuttal argument.*

In her closing argument to the jury, Anthony's attorney described as follows the portions of Ms. Jackson's testimony relevant to the allegation that Anthony was armed:

Janice Jackson saw Mr. Anthony searched and saw the capsule taken from him which contained the crack and she said there was no gun taken from Mr. Anthony because at that time—at the time of the search ... because he had no gun. She saw one gun and one gun only. And that was Officer McLaughlin's gun when he put it in her face upstairs. And she saw [that] Officer Leach's gun was still in his holster. And she saw no other gun. And she did see the search of Mr. Anthony.

In her rebuttal argument, the prosecutor responded as follows:

Frankly, ladies and gentlemen, Janice Jackson did see another weapon. She saw and she testified that she saw, the defendant on the ground, Officer Leach holding up this weapon.[7]

As soon as the prosecutor made this "frank" assertion, Anthony's attorney protested with obvious vehemence: *"Objection! That's absolutely false!"* The judge called counsel to the bench, and Anthony's attorney orally moved for a mistrial. The judge reproved defense counsel for accusing the prosecutor, in front of the jury, of telling a falsehood.[8] The judge reiterated several times that he did not recall any testimony by Ms. Jackson along the lines described by the prosecutor, but he stated that his own recollection was not dispositive: "I don't recall her saying anything about seeing a gun downstairs, I don't, [b]ut that doesn't mean it didn't happen."

The judge informed counsel that he proposed "to tell the jury that it is their recollection that will control during the course of deliberations, and that should do it."

At this point, defense counsel stated that the prosecutor "has been permitted to say it [but] she shouldn't be permitted to repeat it." The judge, apparently concerned about how a prohibition against a repetition of the alleged misstatement could be justified when he was uncertain whether the prosecutor's recollection was correct, inquired: "You know I mean, how [are] we going to do this? Order the testimony?" Defense counsel responded: "If necessary, sure." The judge stated "Order as a matter of fact. Okay!"

The judge's suggestion appears, especially in retrospect, to have had substantial merit. The court reporter who was on duty during Ms. Jackson's testimony was likewise on duty during the rebuttal argument, and she presumably could have read back the relevant testimony. Moreover, the proceedings in the courtroom had been recorded and the tape could have been played.

Obviously, whether the sole defense witness who was present on the scene had provided testimony supporting the prosecution's theory of what occurred—namely, that Officer Leach's service weapon was holstered, but that Leach recovered a second pistol which Anthony must have

---

7. Although the government now concedes that Ms. Jackson did not testify as the prosecutor claimed she did, the prosecutor was quite sure of herself at the time she made her rebuttal argument. She stated: "I had a very clear recollection of that evidence, your honor," to which the judge responded that he "[did] not recall her saying anything like that." When the judge reiterated that "I don't recall that testimony at all," the prosecutor responded: "I would not have said it, Your Honor, if I did not have a clear recollec-

tion." Given the record, the claimed clarity of the prosecutor's recollection is somewhat perplexing.

8. The judge explained, however, that he was *not* chastising Anthony's attorney for objecting, but for arguably impugning the prosecutor's honesty in front of the jury. The judge stated that "both counsel have conducted themselves in [a] very professional [manner] throughout the trial."

dropped to the ground—was an issue of great importance. Nevertheless, and somewhat curiously, the point was not pursued further in the trial court. The judge reiterated that he did not recall any testimony by Ms. Jackson along the lines attributed to Ms. Jackson by the prosecutor. No further mention was made by the court or by counsel of the suggestion that the judge could "order" the testimony. The judge denied the defense motion for a mistrial, and he instructed the jury, in pertinent part, as follows:

Ladies and gentlemen, sometimes, in a—in a hotly contested case—and this is one of the things that I told you about at the beginning of the trial. And it's one of the things I'm telling you now and one of the things that I'll be telling you. And that's why it's so important. That's why I give you the opportunity to take notes. That's why I give you the opportunity to take breaks from now and then because—so that we can all focus.

Sometimes in the midst of all the witnesses and everything else, a lawyer's recollection of the evidence, whether it be the defense recollection or whether it be government's recollection, differs from your own or differs from each other and differs from the court's. And as I've told you in my preliminary instructions to you, as I'm telling you now, as I will be telling you again, it is—if you—if what the lawyers say, whether it be [defense counsel] whether it be [the prosecutor], or even I, does not comport with your own recollection of the evidence and what the [testimony of the] witnesses shows, it is your recollection which controls during the course of your deliberations.

The prosecutor resumed her rebuttal argument, and she immediately returned to

the subject of Ms. Jackson's purported testimony:

The testimony, ladies and gentlemen, as I recall and as you'll have to make a judgment of whether you recall, is Ms. Jackson, when she saw—looked downstairs and *she saw the defendant lying there, she saw Officer Leach holding this gun. His service revolver was in his holster, but she saw this gun.*

*It was not created out of thin air, ladies and gentlemen. It was there. It was dropped by the defendant.*

(Emphasis added.)

At the conclusion of the rebuttal argument, Anthony's attorney renewed her motion for a mistrial. Counsel argued that the prosecutor's statements regarding the contents of Ms. Jackson's testimony, however they were intended, were "blatantly untrue." Counsel stated that the prosecutor's argument "couldn't be more prejudicial" because "the most hotly contested issue in this case is whether my client had a handgun." Moreover, she pointed out, "I am greatly prejudiced because this is rebuttal and I can't answer it." The judge denied the motion for a mistrial, but when he gave his final charge to the jury, he reiterated, in language taken from the Redbook, that statements of counsel are not evidence and that the jury's recollection of the testimony controls.

The jury convicted Anthony of all of the charges submitted to it.[9] This appeal followed.

## II.

## LEGAL ANALYSIS

A. *The contentions of the parties and the standard of review.*

Anthony contends that the prosecutor's misstatement of Janice Jackson's testimo-

---

9. The judge granted Anthony's motion for judgment of acquittal on a separate count of unlawful possession of marijuana.

ny, first made early in her rebuttal argument and then repeated immediately after the bench conference which had been prompted by the vigorous defense objection, unfairly prejudiced his defense and denied him a fair trial. He claims that the prejudice was heightened by the fact that the misrepresentation occurred during rebuttal, so that his attorney had no opportunity to respond, and that it was further aggravated when, over objection, the prosecutor was permitted to repeat the misstatement after counsel had discussed the defense objection at the bench—an event which arguably conveyed to the jury that the prosecutor's assertion was acceptable to the judge. Anthony argues that the only remedial measure taken by the judge—an instruction that counsel's statements are not evidence and that the jury's recollection controls—did not cure the prejudice, and that he is entitled to a new trial. Prompted by a post-argument order of this court directing that an additional issue be briefed, Anthony now also contends that the trial judge erred by ruling on the defense objection when, unable to recall with certainty whether Ms. Jackson had testified as the prosecutor claimed that she had, the judge failed to obtain the readily ascertainable facts—Ms. Jackson's actual testimony—from the court reporter.

The government responds that the judge properly exercised his broad discretion by immediately instructing the jurors that their recollection controls, that the prosecutor's misstatement was unintentional and did not warrant the extreme remedy of a mistrial, that the defense contention that alternative measures (*e.g.,* directing the court reporter to read back the relevant portion of Ms. Jackson's testimony to court and counsel) was not preserved, and that any hypothetical error was harmless.

■■■ We have no doubt that Anthony's underlying claim—that the prosecutor's misstatement denied him a fair trial—was preserved for appeal. Anthony's attorney objected vigorously to the prosecutor's first misstatement; indeed, her assertion, within the hearing of the jury, that the prosecutor's statement was "absolutely false" prompted an immediate rebuke from the trial judge. Defense counsel then moved for a mistrial, requested that the prosecutor not be permitted to repeat her misrepresentation, and again moved for a mistrial when the prosecutor mischaracterized Ms. Jackson's testimony a second time following the discussion at the bench. The defense objection was asserted far more vigorously in this case than in *Lee v. United States,* 668 A.2d 822, 830 (D.C. 1995), in which we treated defense counsel's simple statement "Objection!" as sufficient to preserve a similar claim of prosecutorial misstatement of the evidence.[10]

---

10. The government asserts, not implausibly, that the defense did not preserve the argument that before overruling the objection, the judge should have requested the court reporter to read back Ms. Jackson's testimony in order to ascertain whether the prosecutor had misstated the evidence. We note that although the judge, on his own initiative, raised the possibility of "order[ing] the testimony," and although Anthony's attorney responded "if necessary, fine!", the defense did not seek a ruling on the point when the judge failed to follow up on his own idea. *See Thorne v. United States,* 582 A.2d 964, 965 (D.C.1990)

("A party who neglects to seek a ruling on his motion fails to preserve the issue for appeal.") At the same time, the judge was plainly aware that the testimony could be obtained from the court reporter, and he knew that defense counsel agreed with such a procedure. *Cf. Chatmon v. United States,* 801 A.2d 92, 100 (D.C.2002). Under the circumstances, the judge's announcement (moments after the brief discussion of ordering the testimony) that he would give an immediate "jury's recollection controls" instruction at least arguably had the effect of rejecting any inquiry directed to the court reporter.

 The regulation of closing argument is confided to the sound discretion of the trial court. *United States v. Sawyer*, 143 U.S.App. D.C. 297, 298 n. 5, 443 F.2d 712, 713 n. 5 (1971); *Harris v. United States*, 489 A.2d 464, 467 (D.C.1985). A trial judge's determination whether or not to declare a mistrial is likewise reviewable only for abuse of discretion. *Najafi v. United States*, 886 A.2d 103, 107 (D.C. 2005); *Wright v. United States*, 637 A.2d 95, 100 (D.C.1994) ("standard of review is deferential"). The trial court's discretion must, however, be exercised in accordance with correct legal principles. *Randolph*, 882 A.2d at 219; *(James) Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979). The dispositive question before us is whether the judge exercised his discretion in a legally permissible manner when, in response to what turned out to be a serious misstatement of the evidence by the prosecutor, the judge instructed the jurors that their recollection controls and that counsel's statements are not evidence, but took no other remedial action.

In any event, as we have noted, Anthony's attorney duly preserved the claim of improper prosecutorial argument. "Once a claim is properly presented to the trial court, a party can make any argument in the appellate court in support of that claim, *parties are not limited to the precise arguments made below.*" *Randolph v. United States*, 882 A.2d 210, 217–18 (D.C.2005) (quoting *West v. United States*, 710 A.2d 866, 868 n. 3 (D.C.1998)) (quoting *Yee v. Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)) (emphasis added; ellipsis and brackets omitted). In this case, the underlying "claim" was that the prosecutor's misstatements prejudiced Anthony and that the judge failed adequately to cure the prejudice. The contention that the judge should have asked the court reporter to read back the testimony, and that if he had done so the misrepresentations could have been remedied, is simply a (somewhat) new argument in support of that claim.

The government also points out that Anthony's attorney did not raise the judge's failure to order the testimony in her opening brief

## B. *Misrepresentation of evidence by the prosecutor.*

 "It is elementary ... that counsel may not premise arguments on evidence which has not been admitted." *(George) Johnson v. United States*, 121 U.S.App. D.C. 19, 21, 347 F.2d 803, 805 (1965); *see also United States v. Jenkins*, 140 U.S.App. D.C. 392, 397, 436 F.2d 140, 145 (1970) (quoting *(George) Johnson.*) The applicable principles were summarized in some detail in *Gaither v. United States*, 134 U.S.App. D.C. 154, 413 F.2d 1061 (1969):

The federal courts generally, and this court in particular, have strictly enforced the obligation of the prosecutor to avoid making statements of fact to the jury not supported by proper evidence introduced during trial. This rigor is based on the Supreme Court's observation in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), that the interest of the Govern-

and that she did not file a reply brief. According to the government, Anthony has thus waived the point on appeal. But no matter whose ox is gored when the parties are directed by the court to file supplemental submissions, "this court has frequently requested post-argument briefing of issues not adequately raised by counsel, to the end that, after both parties have been fully heard, the court is in the best position to render a sound decision." *Randolph*, 882 A.2d at 226; *accord*, *Watkins v. United States*, 846 A.2d 293, 296 (D.C.2004); *Outlaw v. United States*, 632 A.2d 408, 410–11 (D.C.1993), *cert. denied*, 510 U.S. 1205, 114 S.Ct. 1326, 127 L.Ed.2d 674 (1994). Indeed, the Supreme Court has stated that "a court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *United States National Bank of Oregon v. Independent Ins. Agents of America*, 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (citation and internal quotation marks omitted); *see Outlaw*, 632 A.2d at 410 n. 7.

ment in a criminal prosecution 'is not that it shall win a case, but that justice shall be done,' and that 'the average jury has confidence that these obligations (of fairness and accuracy) will be faithfully observed.'

We have found error in prosecutorial misstatements even where, as here, they were apparently made in good faith. *We have not regarded the standard judicial caution that the jury's recollection controls as a cure-all for such errors.* We have noticed such errors where they were not objected to at trial, or even on appeal. Thus here, where timely objection was made and pressed on appeal, we must carefully examine the error committed to determine whether it sufficiently prejudiced appellants to call for reversal.

134 U.S.App. D.C. at 172, 413 F.2d at 1079 (emphasis added; footnotes and ellipsis omitted).

■ The court's analysis in *Gaither* leaves no doubt regarding where the obligation to be fair and accurate lies. It is incumbent upon the prosecutor "to take care *to ensure* that statements made in opening and closing arguments are supported by evidence introduced at trial." *United States v. Small,* 316 U.S.App. D.C. 15, 19, 74 F.3d 1276, 1280 (1996) (emphasis added) (citing *Gaither*); *United States v. Williams–Davis,* 319 U.S.App. D.C. 267, 284, 90 F.3d 490, 507 (1996) (same). Thus, although "we are not prepared to treat the isolated (but most unfortunate) [misstatement] by the prosecutor as a deliberate falsehood," *Lee,* 668 A.2d at 831, the prosecutor had an obligation to know, and she should have known, that her description of Ms. Jackson's testimony was untrue.

As Anthony's attorney has argued in the trial court and in this court, the prosecutor's remarks here at issue were made in her rebuttal argument. Under somewhat comparable circumstances, we concluded in *Lee* that

the prosecutor argued facts not in evidence, and ... the opening of his rebuttal argument was improper. *E.g., Coreas v. United States,* 565 A.2d 594, 602–03 (D.C.1989) (*Coreas I*). Moreover, "[i]mproper prosecutorial comments are looked upon with special disfavor when they appear in the rebuttal because at that point defense counsel has no opportunity to contest or clarify what the prosecutor has said." *Id.* at 605 (quoting *Hall v. United States,* 540 A.2d 442, 448 (D.C.1988)).

*Lee,* 668 A.2d at 830. Further, in this case (unlike in *Lee*), the improper argument was repeated following a bench conference precipitated by the initial defense objection, a circumstance which created a potential danger that the jury would view the argument as having the judge's approval.

C. *Prejudice.*

■ We turn now to the question whether Anthony was sufficiently prejudiced to warrant reversal. In *Gaither,* the court stated:

The applicable test for prejudice is whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.

134 U.S.App. D.C. at 172, 413 F.2d at 1079 (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (footnotes containing other cita-

tions omitted).[11] We consider each of the enumerated factors in turn.

#### (1) *The closeness of the case.*

"The strength of the prosecution's case against [Anthony] turned largely on the credibility of the witnesses, and is difficult to assess from our appellate perch." *Lee,* 668 A.2d at 832 (quoting *Clark v. United States,* 593 A.2d 186, 193 (D.C.1991)) (internal quotation marks and ellipsis omitted). As to PWID, Anthony was apprehended with forty-eight packets of cocaine, and the evidence against him was overwhelming, but Anthony's PWID conviction was not affected by the prosecutor's improper remarks. *See* note 5, *supra.* With respect to Anthony's alleged possession of a handgun, however, the government's evidence was more problematic. On the one hand, it is not easy to understand why Officer Leach would falsely assert that Anthony had a pistol. There was no evidence that Leach knew Anthony or had any personal prejudice against him. On the other hand, the credibility of Leach's account was arguably weakened, if not undermined, by his apparent failure to warn his partner that Anthony was armed, and by the discrepancies and handwritten additions to the records relating to the weapon. Although defense counsel's claim in closing argument that the prosecution case "smacks of untruth" and "doesn't make any sense" may perhaps be somewhat overstated, we think it fair to say that the questions she raised regarding the pistol were, at least, non-frivolous in nature, and that, without Ms. Jackson's testimony as incorrectly described by the prosecutor, the government's proof that Anthony was armed was not especially compelling. If,

on the other hand, Ms. Jackson, a witness called to the stand by the defense, and the sole defense witness who was on the scene, had testified as the prosecutor claimed she had, then any doubts generated by weaknesses in Leach's testimony or by discrepancies in the paper work would surely have evaporated. Ms. Jackson was Anthony's witness and apparently his friend, and there was no conceivable reason for her to falsely link him with a handgun. If Ms. Jackson had in fact provided testimony that Officer Leach recovered a weapon which was not his holstered service revolver, and if she had thus effectively corroborated the government's claim that Anthony had dropped a pistol to the ground, then it is reasonable to suppose, in the absence of any evidence to the contrary, that the jury would have believed both her and the officer with respect to that critical issue.

#### (2) *The centrality of the issue and the gravity of the misstatements.*

Given the insubstantiality of Anthony's defense to the PWID charge, the central question of fact for the jury was whether, as the prosecution claimed, Anthony was armed with a pistol. The prosecutor's misrepresentations of the evidence went directly to that issue, and thus to the very heart of the case. We also conclude that the gravity of the prosecutor's improper comments was substantial. If Ms. Jackson had testified as the prosecutor twice claimed that she did, her evidence would have been incriminating in the extreme. A witness called by the defense would then have supported the prosecution case with respect to the principal factual issue in the case (and the *only* substantial issue),

---

11. In *Lee,* the *Gaither* standard is stated in a similar but not identical manner:

> Specifically, we must consider, in context, the gravity of the improper argument, its relationship to the issue of guilt, the effect

of any corrective action by the trial judge, and the strength of the government's case. 668 A.2d at 831 (citation and internal quotation marks omitted). We discern no substantive difference between the two articulations.

namely, whether Anthony was armed with a pistol. The reality—Ms. Jackson's testimony lent *no* support to the allegation that Anthony was armed—reflects the gravity of a solemn but false assertion to the jury by a representative of the government that Ms. Jackson had incriminated Anthony in this manner.

(3) *The steps taken to mitigate the effects of the prosecutor's misstatements.*

■ The only measure taken to remedy the effects of the prosecutor's mischaracterizations of Ms. Jackson's testimony was the contemporaneous instruction, repeated in the judge's subsequent charge to the jury, that the statements of counsel are not evidence and that the jury's recollection controls. At the time that the judge so instructed the jury, he was uncertain whether the evidence had in fact been misstated by the prosecutor. The judge obviously believed that any inquiry into this point could be finessed, and the need to resolve the question could be avoided, by an immediate "jury's recollection controls" instruction. Although the judge undoubtedly attempted to be fair, and the pros and cons of his handling of the issue are concededly easier to detect in hindsight than in the heat of trial, we are unable to agree that the judge's action was sufficient to avert the prejudice generated by the prosecutor's inaccurate representations during her rebuttal argument.

■ Obviously, not every misstatement by a prosecutor warrants judicial intervention, *Harris v. United States*, 131 U.S.App. D.C. 105, 106 n. 1, 402 F.2d 656, 657 n. 1 (1968), nor is a mistrial or the reversal of a conviction always required. *Gaither*, 134 U.S.App. D.C. at 172–73, 413 F.2d at 1079–

80; *see also Lee*, 668 A.2d at 832–33. As the court stated in *United States v. DeLoach*, 164 U.S.App. D.C. 116, 504 F.2d 185 (1974),

> [a] trial judge should not interrupt every argument [12] which he thinks undesirable. Here as in other areas there are 'gray zones' of argument which, though they should not be made, do not warrant interruption.... The problem is one of balance; a serious transgression is impermissible by definition and it is as to these that intervention by the trial judge is called for. Other deviations can be dealt with by the trial judge's post-trial admonition to counsel to avoid repetition of any departure from proper argument. This has long been an accepted method of instructing lawyers on courtroom conduct.

164 U.S.App. D.C. at 121, 504 F.2d at 190 (quoting *Harris*, 131 U.S.App. D.C. at 106 n. 1, 402 F.2d at 657 n. 1). In the present case, we have no hesitation in concluding that the prosecutor's "transgression," though presumably unintentional, was "serious" in nature, and that an appropriate judicial response was called for. Indeed, had the trial judge been certain that the prosecutor's initial representation regarding Ms. Jackson's testimony was false, he would have been well advised to call counsel to the bench even in the absence of a defense objection. *Gaither*, 134 U.S.App. D.C. at 172, 413 F.2d at 1079.

As explicitly stated in *Gaither*, the court "ha[s] not regarded the standard judicial caution that the jury's recollection controls as a cure-all for such errors." 134 U.S.App. D.C. at 172, 413 F.2d at 1079. Recently, in *Fearwell v. United States*, 886 A.2d 95 (D.C.2005), we held, in a situation

12. In this case, however, the question is not whether the judge should have interrupted the prosecutor's argument; the defense objec-tion had that consequence. Rather, the issue is whether the judge took adequate measures to remedy the effects the improper argument.

comparable to the one presented here, that "[t]he judge's instruction that the jury's recollection controlled, given during his main charge to the jury, was insufficient to alert the jury to the prosecutor's clear mischaracterization of the evidence." *Id.* at 102;[13] *see also King v. United States,* 125 U.S.App. D.C. 318, 331, 372 F.2d 383, 396 (1966); *but cf. Sherrod v. United States,* 478 A.2d 644, 659 (D.C.1984) (instruction that jury's recollection controls held sufficient).

It is, of course, possible, that in spite of the prosecutor's misstatements, the jury was able to recollect the evidence, ignore the prosecutor's misrepresentation of it, and view the prosecutor's repetition of her misrepresentation after the bench conference as simply a second error on the prosecutor's part, and as one not necessarily endorsed by the judge. Such a possibility, however, does not warrant affirmance in this case. The standard under, *inter alia, Kotteakos* and *Gaither,* is whether we can say with "fair assurance ... that the judgment was not substantially swayed by the error." *Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239. Here, we lack the requisite "fair assurance."

We appreciate the reasons for the trial judge's reluctance or unwillingness to declare a mistrial in this case. "[A] mistrial entails substantial social costs, both in terms of the time and resources of all trial participants, and because it is often difficult, years after the fact, to put Humpty–Dumpty together again and to reassemble the relevant evidence for a second trial." *Peyton,* 709 A.2d at 69 (citations omitted). Although the judge believed that defense counsel's recollection of Ms. Jackson's tes-

timony was correct and that the prosecutor was mistaken, he was uncertain about this, and his reliance upon a "jury's recollection controls" instruction undoubtedly appeared to provide a simple and logistically convenient solution to the problem. Nevertheless, and notwithstanding the social costs of granting a mistrial, a trial must sometimes be aborted because the danger of prejudice has undermined the reliability of the proceedings to such a measure that the drastic remedy of a mistrial is necessary.

But in this case, as the judge at one point appeared to recognize, a mistrial was not the only curative option available to the court. The court reporter on duty during rebuttal argument was the same person who had taken down Ms. Jackson's testimony on the previous day. A brief interruption of closing argument in order to resolve the conflict between the two attorneys' recollections of Ms. Jackson's testimony would have revealed beyond any doubt that defense counsel was right and that the attorney for the government was wrong. The judge could then have provided accurate information to the jurors regarding the content of Ms. Jackson's testimony, or he might perhaps have permitted the prosecutor to correct her misrecollection and to proceed with her rebuttal argument from there. Where, as in this case, the question whether the prosecutor's representation was true or false is of such potentially dispositive consequence, it is important for the judge, at the time he or she makes a ruling, to be fully apprised of the relevant facts. *See, e.g., United States v. Touloumis,* 771 F.2d 235, 242 (7th Cir. 1985) ("The trial judge told the attorneys

---

13. *Fearwell* is distinguishable upon the ground that, in this case, the instruction that the jury's recollection controls was given contemporaneously. In our view, however, this distinction is not dispositive, especially when

as in this case, the prosecutor was permitted to, and did, repeat her misrepresentation *immediately after* the judge had considered the defense objection and given his contemporaneous instruction.

to review the testimony with the court reporter and to prepare a supplemental instruction if defense counsel was correct as to the testimony.").[14]

It is unfortunate that, despite the trial judge's obvious efforts to be fair to both parties, the case must now be retried, more than a decade after the events at issue, with respect to the weapons offenses and the "while armed" element of PWID. In retrospect, however, "this case demonstrates again that the shortest way around is often the longest way through." *In re C.W.*, 916 A.2d 158, 169 n. 10 (D.C.2007) (quoting *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 302 (5th Cir.1973)) (quoting *Webb v. Standard Oil Co.*, 451 F.2d 284, 285 (5th Cir.1971)). If the judge had followed his own suggestion and "ordered" Ms. Jackson's testimony, the necessity of a retrial might well have been avoided.

### III.

For the foregoing reasons, Anthony's convictions for PFCV, CPWOL and PWIDWA are reversed, and the case is remanded to the trial court for a new trial or for other proceedings consistent with this opinion. Anthony's convictions of unarmed PWID and of unlawful possession of PCP are affirmed.

*So ordered.*

---

14. In its supplemental brief, the government has repeatedly referred to the possibility of asking the court reporter to read back the testimony as an "extraordinary step." We discern nothing at all "extraordinary" about a judge's attempting to refresh his memory and ascertaining the relevant facts before ruling on a significant objection and a motion for a mistrial.

The government also argues that there was no need for the judge to order the testimony because "[t]he recollections of Judge Jackson and appellant's counsel were the same—that Ms. Jackson *did not* testify that she saw appellant with a gun." This contention is singularly unpersuasive. Although the judge believed that defense counsel's recollection was correct, he was obviously uncertain. If he had been sure that the prosecutor's representation on such an important point had been in error, we do not believe that he would have left it uncorrected.